IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES,

        Plaintiff,

        v.

CASSIDINE MCDONALD,

        Defendant.

Case No. 1:11-CR-01075-MV-1

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant's Notice of Defendant's Invocation of the Right to Be Free from Compelled Self-Incrimination & Defendant's Objection to the *Bruce* Memo Requiring Truthful Answers to the Polygraph without Regard to Whether Those Answers are Incriminatory (Doc. 75). The Court, having considered the motion, briefs, and relevant law, and being otherwise fully informed, finds that the Motion is not well-taken and must be denied.

## BACKGROUND

On September 7, 2011, Cassidine McDonald pleaded guilty to three counts of Aggravated Sexual Abuse, an Indian Country offense, in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2)(C). Doc. 28. The Plea Agreement was made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and, after acceptance by this Court, stipulated a specific sentencing range of 15 years imprisonment followed by a five-year term of supervised release. *Id.* On May 3, 2012, this Court imposed that sentence as to each count, with all terms of imprisonment and supervised release to run concurrently. Doc. 33. Mr. McDonald was released from custody and

1

began supervision on February 26, 2024. *See* Doc. 60. Among his conditions of release were prohibitions on "leav[ing] the judicial district without the permission of the court or probation officer" and "hav[ing] contact with children under the age of 18 without prior written permission of the probation officer." Doc. 33 at 4, 6.

On January 28, 2025, U.S. Probation officers conducted an unannounced visit to the Albuquerque-area apartment in which Mr. McDonald had been residing since April 2024 when he was released from the Dierson Charities Residential Reentry Center. Doc. 60 at 1. They observed a small child (identified as C.M.) in the residence, who was determined to be the seven-year-old son of Mr. McDonald's new girlfriend, Henrietta Tom. *Id.* Toys and other evidence that this was not a one-time visit were discovered. *Id.* Ms. Tom's mother Bernadine Perry was also in the apartment. *Id.* Ultimately, Ms. Tom and Ms. Perry reported that they had been living in Sawmill, Arizona, and that Mr. McDonald had come out to visit multiple times before ultimately picking them and C.M. up in a rental truck and relocating them to his apartment in Albuquerque, where they had no connections, transportation, or support systems outside of Mr. McDonald. *Id.* The following day, Probation filed a Violation Report (Doc. 60) based on Mr. McDonald's unauthorized trips to Arizona and contact with a minor, and he was arrested. *Id.*; Doc. 62. United States Magistrate Judge Kirtan Khalsa ordered his detention pending a revocation hearing before this Court, which was eventually held on April 22, 2025. *See* Doc.70; Doc. 76. At that hearing, this Court sentenced Mr. McDonald to nine months imprisonment followed by 14 years of supervised release. Doc. 78.

However, hours before the hearing commenced, Mr. McDonald, via counsel, filed an objection to the "*Bruce* memo" that Probation had disclosed on April 14, 2025. Required under the Tenth Circuit's decision in *U.S. v. Bruce*, that memorandum satisfies the court's obligation to

notify defendants of potentially imposable special conditions for supervised release when the conditions "implicate a liberty interest" and lack an "obvious nexus" to the underlying conviction. 458 F.3d 1157, 1167-68 (10th Cir. 2006) (quoting *U.S. v. Bartsma*, 198 F.3d 1191, 1200 n.7 (10th Cir. 1999)). One of the prospective conditions identified in the *Bruce* memo provided as follows:

> If recommended in the sex offense-specific assessment, you must begin attending and participating in sex offender treatment consistent with the recommendations of the evaluation. You must follow the rules and regulations of that program. The probation officer, in conjunction with the treatment provider, will supervise your participation in the program (location, modality, duration, intensity, etc.). Furthermore, you must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider. You may be required to pay a portion or all of the cost of the assessments and treatment.

Mr. McDonald objected to the possibility that this special condition would be imposed on the ground that it would violate his Fifth Amendment right to be free from self-incrimination "to the extent that it requires him to truthfully participate in a polygraph regardless of whether such statements are incriminatory." Doc. 75. Although Mr. McDonald challenged the inclusion of the polygraph condition in the *Bruce* memo, the Court did, in fact, impose that special condition as presented in the *Bruce* memo. The Court thus now construes his motion as a challenge to the imposed condition.[1]

## LEGAL STANDARD

"To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 189 (2004). The law considering that privilege in the context of mandatory

---

[1] Mr. McDonald is not retrospectively challenging any aspects of his initial term of supervised release. However, the Court notes for context that the same special condition had been included. *See* Doc. 33 at 6.

3

disclosures during post-conviction supervision begins with the Supreme Court's 1984 decision in *Minnesota v. Murphy*, 465 U.S. 420 (1984). In *Murphy*, the defendant had been placed on state probation following a 1980 conviction related to criminal sexual conduct, and, *inter alia*, his conditions of probation required him to "participate in a treatment program for sex offenders" and "be truthful to his probation officer 'in all matters.'" *Id.* at 422. He was told that noncompliance could lead to revocation of his probation. *Id.* During the course of his mandatory treatment, Mr. Murphy admitted to his counselor that he had raped and murdered a teenage girl back in 1974 – an offense for which he had been a suspect but was never charged. *Id.* at 423. Since he had waived confidentiality, his counselor was authorized to (and did) share this admission with his probation officer. *Id.* The probation officer in turn confronted Mr. Murphy during their next check-in meeting, and told him that she had a duty to inform authorities about the information he had divulged to his counselor. *Id.* at 423-24. She did, and the next month, a Minnesota grand jury returned an indictment against him for first-degree murder. *Id.* at 424-25. Mr. Murphy sought to suppress testimony concerning the confession he made to his counselor and to his probation officer on Fifth Amendment grounds. *Id.* at 425.

The Supreme Court ultimately held that the Fifth and Fourteenth Amendments did not prohibit the introduction of evidence concerning Mr. Murphy's admissions, reasoning that the privilege against self-incrimination is not self-executing and that, because he was not in police custody at the time of his counseling session or the meeting with his probation officer, his failure to assert the privilege could not be excused under *Miranda v. Arizona*, 384 U.S. 436 (1966). 465 U.S. at 429-30. In other words, his admissions were "voluntary since he was free to claim the privilege and would suffer no penalty as the result of his decision to do so." *Id.* at 429.

As to whether Mr. Murphy's statements were compelled, the Court found that being required to show up to treatment and respond truthfully did not amount to being compelled for Fifth Amendment purposes, since the same logic could be applied to grand jury witnesses who are obligated to appear and tell the truth. *Id.* at 431. In either scenario, compulsion would only exist if "the state, either expressly or by implication, asserts that invocation of the privilege" would lead to imposition of "substantial penalties." *Id.* at 434. The Court found that either a direct or implied threat of revoking probation would create the "classic penalty situation," but determined that there was no basis to find that Mr. Murphy had been threatened with revocation if he showed up and validly asserted his Fifth Amendment privilege when asked questions to which an honest answer would be incriminating. *Id.* at 436. An "extra [] step" is necessary to transform the permissible threat of a penalty for not showing up to a court-ordered meeting or for falsely responding to questions into the impermissible threat of a penalty for the valid assertion of the Fifth Amendment privilege. *Id.* That "extra step" does not require an overt threat, but the Court concluded that there was no "direct evidence that Murphy confessed because he feared that his probation would be revoked if he remained silent." *Id.* at 437.

The Court directed considerably less attention to whether Mr. Murphy's statements were incriminating, given that confessing to a homicide involves large and obvious criminal liability. However, in a footnote, the Court did make two important observations. First, the privilege cannot be asserted in response to questions as to which truthful answers could lead to revocation of probation but could not lead to a future criminal proceeding. *Id.* at 435 n.7. For example, sex offenders are typically prohibited from viewing legal pornography. Even though admitting to violating that condition during a polygraph could lead to the substantial penalty of revocation, defendants cannot assert their Fifth Amendment rights in that scenario since the information the

Government would seek to compel is not incriminating. Second, the government may "insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding." *Id.* The government thus reserves the right to compel would-be incriminating testimony if it agrees not to use that testimony to prosecute or bring charges against the defendant based on that testimony.

Since *Murphy*, federal district courts and courts of appeal have considered how the Supreme Court's Fifth Amendment doctrine applies to clinical polygraph examinations required as a special condition of a sex offender's probation or supervised release. The Tenth Circuit has taken up a version of that question twice in the last decade.

In *United States v. Von Behren*, the defendant was serving a three-year term of supervised release after a conviction for distribution of child pornography. 822 F.3d 1139, 1141 (10th Cir. 2016). Pursuant to conditions of release, he was required to successfully complete a sex offender treatment program, which included "a sexual history polygraph requiring him to answer four questions regarding whether he had committed sexual crimes for which he was never charged." *Id.* The treatment program also required him "to sign an agreement instructing the treatment provider to report any discovered sexual crimes to appropriate authorities." *Id.* Mr. Von Behren argued that the polygraph condition violated his Fifth Amendment privilege against self-incrimination. *Id.* The district court rejected this argument, holding "that the polygraph questions [did] not pose a danger of incrimination in the constitutional sense." *Id.* The Tenth Circuit granted Mr. Von Behren's request for a stay pending appeal, and then "reversed on the Fifth Amendment issue." *Id.*

Stating that "[t]here is no doubt that answering questions during a polygraph examination

involves a communicative act which is testimonial," the Tenth Circuit focused its analysis on the elements of incrimination and compulsion. *Id.* at 1144. As to the question of incrimination, the Tenth Circuit rejected the district court's finding that the general, anonymized nature of the responses sought during a sexual history polygraph did not present a "real and appreciable risk of incrimination." *Id.* at 1145. The Court reasoned that a statement need only provide a "lead" or a "link in a chain of evidence that could lead to prosecution" to satisfy the Fifth Amendment's incrimination element. *Id.* at 1144 (quoting *Maness v. Meyers*, 419 U.S. 449, 461 (1975)). The Court determined that even generalized information collected during a sexual history polygraph meets that standard, noting that, "[i]f there were presently an investigation looking into the commission of a sex crime, and if Mr. Von Behren were a suspect, an affirmative answer to these questions would allow the police to focus the investigation on him." *Id.* at 1145. That is not to say that an active investigation is necessary to make an answer incriminating. Answers that could provide a "lead" or a "link" in potential future criminal investigations are also incriminating.

As to the compulsion issue, the Court cited *Murphy* for the proposition that "a threat to revoke one's probation for properly invoking his Fifth Amendment privilege is the type of compulsion the state may not constitutionally impose." *Id.* at 1150. In the case before it, the Court explained, "the government asserted [] that it would seek Mr. Von Behren's remand to prison if he refused to answer incriminating sexual polygraph questions because that refusal would (and did) ultimately result in his termination from the sex offender treatment program." *Von Behren*, 822 F.3d at 1150. Applying *Murphy*, the Court concluded that the government's "threat constituted unconstitutional compulsion within the meaning of the Fifth Amendment." *Id.* Thus finding all of the elements met, the Court held "that the government compelled Mr. Von Behren to be a witness against himself" in violation of the Fifth Amendment. *Id.* at 1151.

7

Four years later, in *United States v. Richards*, the Tenth Circuit considered another Fifth Amendment objection to a post-conviction polygraph mandate for a sex offender. 958 F.3d 961 (10th Cir. 2020). The special condition at issue required the defendant "to submit to periodic polygraph testing as a means to ensure that he is in compliance with the requirements of his[] supervision or treatment program." *Id.* at 966. The condition specifically prohibited the use of "any polygraph results or testing . . . for purposes of instituting or instigating criminal charges," but allowed such results to be "used for the . . . filing of a petition to revoke supervised release." *Id.* at 964. Mr. Richards argued that this condition "violate[d] the Fifth Amendment because it authorize[d] revocation of his supervised release based on a valid invocation of his privilege against self-incrimination." *Id.* at 966. In rejecting this argument, the Tenth Circuit found that while "answering questions during a polygraph examination involves a communicative act which is testimonial," and while "the polygraph examination to which Defendant must submit might elicit potentially incriminating statements that could provide a lead or a link in the chain of evidence needed to prosecute the speaker," the challenged condition nonetheless "fails to satisfy the compulsion element of Defendant's Fifth Amendment claim." *Id.* at 967 (citations omitted).

Applying *Murphy* and *Von Behren*, the Court found the issue of compulsion "an easy one to resolve." *Id.* Specifically, the Court noted that "neither the Government nor any other entity ha[d] threatened – explicitly or by implication – to revoke Defendant's supervised release if he refuse[d] to answer a question during a polygraph examination on valid Fifth Amendment grounds." *Id.* The Court further noted that "[n]othing in the record suggests that the Government has attempted or intends 'to take the extra, impermissible step' of compelling Defendant to incriminate himself." *Id.* (quoting *Murphy*, 465 U.S. at 436). Indeed, the Court found that, to the contrary, the government had represented that the defendant "fac[ed] no risk of revocation based

8

on validly asserting his privilege[] because such a revocation would be unlawful." *Richards*, 958 F.3d at 967. The Court further found that "the polygraph condition, on its face," did not impermissibly allow "revocation of Defendant's supervised release based on his refusal to answer polygraph questions on valid Fifth Amendment grounds." *Id.* at 967-68. Nor, explained the Court, did the absence of language explicitly incorporating Fifth Amendment protections into the polygraph requirement "render the condition unconstitutional or otherwise infirm," as it is "the Fifth Amendment – not the terms of a special condition – [that] guarantees Defendant's privilege against self-incrimination." *Id.* at 968. Although holding that the challenged polygraph condition did not "facially violate[] the Fifth Amendment," the Court added the caveat that if, "at a later date, the Government changes its position and threatens to revoke Defendant's supervised release based on his valid invocation of his privilege against self-incrimination during a polygraph examination, Defendant may raise a Fifth Amendment challenge at that time." *Id.*

## DISCUSSION

On the instant motion, Mr. McDonald argues that the special condition of his release requiring him to submit to clinical polygraph examinations violates his Fifth Amendment right to be free from self-incrimination "to the extent that it requires him to truthfully participate in a polygraph regardless of whether such statements are incriminatory." Doc. 75. Thus, as did the defendant in *Richards*, Mr. McDonald raises a facial challenge to the condition the Court imposed. But as the defendant's challenge in *Richards* failed, so too does Mr. McDonald's challenge. Unless and until there is an indication that the government will impose a substantial penalty on Mr. McDonald for validly asserting his Fifth Amendment privilege against self-incrimination, such as seeking revocation of his supervised release, Mr. McDonald cannot satisfy

9

the final element of his Fifth Amendment claim. The Court analyzes each of the three *Hiibel* elements in turn.

First, "[t]here is no doubt that answering questions during a polygraph examination involves a communicative act which is testimonial." *Richards*, 958 F. 3d at 967 (quoting *Von Behren*, 822 F.3d at 1144). The testimonial requirement was not disputed in *Murphy, Von Behren*, or *Richards,* and it is not disputed in this case.

Second, it is possible that Mr. McDonald's responses to questions during a polygraph examination could be incriminating. The facts of *Von Behren* are an extreme example, since three of the four standard questions the treatment facility posed during sexual history polygraphs directly "ask[ed] for the admission of a felony" by inquiring about whether the defendant (1) had sex with a prepubescent minor, (2) physically forced or threatened someone to engage in sexual contact, or (3) had sexual contact with a sleeping or otherwise unconscious person. *Von Behren*, 822 F.3d at 1145. The government attempts to distinguish incrimination in this case, arguing that Mr. McDonald's "special condition contains no reference to specific polygraph questions the examiner will ask that are designed to elicit incriminating information." Doc. 79 at 4. To be incriminating, however, a statement must only "provide a lead or a link in the chain of evidence needed to prosecute the speaker." *Richards*, 958 F.3d at 967 (citing *Von Behren*, 822 F.3d at 1145) (internal citations omitted). Thus, while truthful affirmative responses to the questions in *Von Behren* almost certainly would have provided "lead[s] or link[s]," less directly incriminating questions could equally elicit answers that might lead to the prosecution of Mr. McDonald. As the Court noted in *Richards*, "[a]fter all, the purpose of a polygraph test is not to elicit honest responses to innocuous questions such as, for example, whether Defendant enjoyed his morning coffee." 958 F.3d at 967.

Whether the incrimination element is met, however, is of no moment, as controlling precedent makes clear that the polygraph condition at issue here fails to satisfy the requisite compulsion element of Mr. McDonald's Fifth Amendment challenge. To be sure, Mr. McDonald "must submit to clinical polygraph examinations, as directed by the probation officer and/or treatment provider," must "attend[]" and "participat[e]" in sex offender treatment if recommended by a sex offender-specific assessment, and "must follow the rules and regulations of that program," which well might include mandatory polygraph examinations. But these requirements, on their face, do not equally require Mr. McDonald, at risk of revocation of his supervised release, to truthfully answer potentially incriminating questions. As in *Richards*, there is no evidence to suggest that either the government or any other entity has threatened, explicitly or implicitly, to revoke Mr. McDonald's "supervised release if he refuses to answer a question during a polygraph examination on valid Fifth Amendment grounds." *Richards*, 958 F.3d at 967. Accordingly, as in *Richards*, "[n]othing in the record suggests the Government has attempted or intends" to take the "extra, impermissible step" that would transgress his Fifth Amendment right. *Id.* Unless and until Mr. McDonald validly attempts to invoke the privilege on a question-by-question basis and the government expressly or implicitly threatens him with a substantial penalty for doing so, he has not been compelled.

Further, as the Court found in *Richards*, the language in Mr. McDonald's current condition does not on its face impermissibly allow revocation of his supervised release "based on his refusal to answer polygraph questions on valid Fifth Amendment grounds." *Richards*, 958 F.3d at 967-68. Mr. McDonald may be required to "submit to clinical polygraph examinations," but that does not necessarily translate to "truthfully answer even incriminating questions during mandatory clinical polygraph examinations." *See* Doc. 78 at 6. Indeed, given the constitutional

11

stature of the Fifth Amendment, courts should strive to construe conditions of supervised release to avoid Fifth Amendment problems where possible. *See Richards*, 958 F.3d at 968 (citing *United States v. Davis*, 242 F.3d 49, 52 (1st Cir. 2001) (per curiam)). Accordingly, the condition, as written, properly allows Mr. McDonald "to legitimately exercise his Fifth Amendment right without facing the risk that a valid assertion of his provide and refusal to incriminate himself during a polygraph examination will result in revocation of his supervised release." *Richards*, 958 F.3d at 968.[2]

Like Mr. Richards, Mr. McDonald may prefer that the language of his special condition be modified to avoid even the possibility of revocation based on a legitimate assertion of his Fifth Amendment rights. However, "the absence of such limiting language does not render the condition unconstitutional or otherwise infirm," as it is "the Fifth Amendment – not the terms of a special condition – [that] guarantees [his] privilege against self-incrimination." *Richards*, 958 F.3d at 968. Mr. McDonald maintains his right to refuse to answer incriminating questions – under polygraph or not – and nothing about the sentence this Court imposed on May 6, 2025, undermines that fact.

The Court thus holds that the challenged polygraph condition does not facially violate the Fifth Amendment. However, the Court also recognizes that defendants face considerable practical difficulties in asserting their constitutional rights in this context because the law is hard to understand, the stakes are high, and the lines between incriminating versus non-incriminating

---

[2] The Court recognizes that it lacks authority to tell a private treatment provider how to enforce, or not enforce, their rules and regulations. However, if the treatment provider dismissed Mr. McDonald from its program for refusing to answer specific questions, that would not amount to a substantial penalty imposed by the government. That line would not be crossed unless the government threatened to revoke his supervised release for program noncompliance connected to a valid refusal to answer self-incriminating questions.

and compelled versus non-compelled are subtle and can be crossed without a defendant realizing it. Importantly, defendants' right to counsel does not generally extend into supervised release, meaning that these tricky waters often must be navigated alone. In that spirit, what follows is an effort to give Mr. McDonald and similarly situated defendants a practical road map for understanding and ultimately vindicating their rights.

First, the Court's decision today leaves open the door to future as-applied challenges. As the Tenth Circuit allowed in *Richards*, this Court will allow Mr. McDonald to raise a Fifth Amendment challenge if, at a later date, the government threatens to revoke his supervised release based on the valid invocation of his privilege against self-incrimination during a polygraph examination. *Richards*, 958 F.3d at 968.

Second, the Court writes specifically to advise that since meetings with a treatment provider or probation officer are not custodial, and since the addition of a polygraph machine will not necessarily transform such an encounter into an "inherently coercive custodial interrogation," Mr. McDonald must affirmatively assert the Fifth Amendment privilege if he does not want to respond to a question with a potentially incriminating truthful answer. *Murphy*, 465 U.S. at 430-31 (quoting *Roberts v. United States*, 445 U.S. 552, 560 (1980)). Any question to which the answer may provide a "lead" or a "link" connecting a defendant to a different crime is incriminating unless the government explicitly agrees not to prosecute or pursue criminal charges against the defendant based on that answer, or unless the Court, as in *Richards*, shields a defendant's answers from use in future criminal proceedings. Accordingly, defendants should err on the side of asserting the privilege even where the question does not directly ask about the commission of a crime.

13

Third, the Government can properly compel defendants to share information – under polygraph or not – if that information would involve admitting to the violation of conditions of supervision but *would not* equally involve admitting to the commission of a crime. Thus, a defendant may not validly assert the Fifth Amendment privilege if asked a question the answer to which would amount to admitting a violation of their supervision, so long as it does not also amount to admitting the commission of a crime.

One caveat to remember, however, is that revocation of supervised release amounts to a substantial penalty. For this reason, the government may not use any direct or implied threats to seek revocation of a defendant's release in an effort to compel a defendant to share any incriminating information. Because any such threats of revocation would constitute compulsion, they are not allowed unless the information to be compelled is either non-testimonial or non-incriminating.

Fourth, while the conditions that the Court imposed here do not facially violate the Fifth Amendment, Mr. McDonald is not foreclosed from moving to modify those conditions to include language that better strikes a balance between, on the one hand, his constitutional rights and, on the other hand, Probation's need to collect honest information to ensure his effective rehabilitation. For example, the condition that the Tenth Circuit upheld in *Richards* included a clause that prohibited polygraph results or testing from being used for "instituting or instigating criminal charges." 958 F.3d at 964. Upon a motion to modify, the Court would consider adding language akin to that approved in *Richards* or otherwise consistent with this Opinion, as identified and requested by Mr. McDonald.

## CONCLUSION

Mr. McDonald has failed to establish that the special condition requiring him to submit to a polygraph examination satisfies the compulsion element of his Fifth Amendment claim. Accordingly, the challenged condition does not facially violate the Fifth Amendment. Mr. McDonald may raise a Fifth Amendment challenge if at any point the government threatens to revoke his supervised release based on his valid invocation of his privilege against self-incrimination during a polygraph examination.

**IT IS THEREFORE ORDERED** that Defendant's Notice of Defendant's Invocation of the Right to Be Free from Compelled Self-Incrimination & Defendant's Objection to the *Bruce* Memo Requiring Truthful Answers to the Polygraph without Regard to Whether Those Answers are Incriminatory is **DENIED** without prejudice, consistent with this Opinion.

DATED this 5th day of January 2026.

_____
MARTHA VAZQUEZ
Senior United States District Judge